FILED & JUDGMENT ENTERED
Christine F. Winchester

December 19 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **ROBERT HOLLAND, SR.** ) | Chapter 7 |
| **MELISSA HOLLAND,** ) | Case No. 25-50165 |
| ) | |
| Debtors. ) | |

**ORDER GRANTING MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)(1) & (2) AND GIVING DEBTORS 30 DAYS TO CONVERT CASE**

This matter is before the Court on the Amended Motion to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(2) (the "Motion") filed by the United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator") on October 24, 2025, the response to the Motion (the "Response") filed by Robert Holland, Sr. and Melissa Holland (collectively, the "Debtors") on November 28, 2025, and the Bankruptcy Administrator's reply in support of the Motion (the "Reply") filed on December 2, 2025. ECF Nos. 27, 40, 41.

On December 3, 2025, the Court held a hearing on the Motion, the Response, and the Reply in Charlotte, North Carolina. At the hearing, Heather Culp appeared on behalf of the Bankruptcy Administrator and Jeanne Ann Pennebaker appeared on

behalf of the Debtors. The Court heard testimony from Robert Holland, Sr. ("Mr. Holland"); Ms. Holland was also present at the hearing. Having considered the evidence presented, the parties' briefs, the record, the arguments of counsel, and the applicable law, and for the reasons set forth below and on the record during the hearing, the Motion is **GRANTED**.

## BACKGROUND

The Debtors filed this bankruptcy case on May 26, 2025 (the "Petition Date"). ECF No. 1. "Individuals who file for bankruptcy relief under Chapter 7 liquidate their nonexempt assets, rather than dedicate their future income, to repay creditors." Ransom v. FIA Card Services, N.A., 562 U.S. 61, 65 n.1 (2011) (citing 11 U.S.C. §§ 704(a)(1), 726). The debts of the Debtors are primarily consumer.[1]

The Debtors' schedules and statements disclose an ownership interest in two real properties (their primary residence and a Las Vegas timeshare) and five vehicles. ECF No. 1. Their statement of intention indicates an intention to surrender one vehicle, a 2023 Kia K5 financed through Ally.[2] Id. Their Schedule J does not budget for any estimated ongoing monthly debt payment for the Kia. ECF No. 13. Their Statement of Financial Affairs does not reflect any payment on the Kia debt during the 90 days prior to the Petition Date. ECF No. 1. Mr. Holland testified at the hearing that he and his spouse last made a payment on the Kia in March 2025, and Ally has

---

[1] For purposes of the Bankruptcy Code, the term "consumer debt" means "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).

[2] The Debtors also intend to surrender the timeshare interest but because they did not claim any expense deduction on their means test calculation for the secured debt payments related to the timeshare, it is not relevant to the means test analysis. ECF No. 24.

repossessed the Kia.[3] Ally has relief from stay to liquidate the Kia pursuant to a consent order with the Debtors, which was entered on November 24, 2025. ECF No. 36.

In accordance with 11 U.S.C. § 707(b)(2)(C), the Debtors filed a statement of current monthly income.[4] As most recently amended, the Debtors calculate that as of the Petition Date, they had $11,892.51 in current monthly income as that term is defined at 11 U.S.C. § 101(10A), annualized to $142,710.12. ECF No. 24. The Debtors are above the $94,750 median income for their North Carolina household of three. Id. Pursuant to 11 U.S.C. § 707(b)(2)(C), the Debtors also filed a calculation referred to as the "means test." ECF No. 24. "The 'means test' consists of a statutory formula for determining whether the debtor's income in excess of his expenses is sufficient to permit him to pay a specified amount or percentage of his nonpriority unsecured debts during a five-year period in a Chapter 13 bankruptcy proceeding. If so, the statute creates a rebuttable presumption that his case is abusive." In re Oliver, 350 B.R. 294, 299 (Bankr. W.D. Tex. 2006) (citing 11 U.S.C. § 707(b)(2)(A)).

Four of the five vehicles that the Debtors owned on the Petition Date were financed; the Debtors own a 2007 Audi A6 free and clear. ECF No. 1. On their means

---

[3] These two statements are not necessarily inconsistent because the Debtors were not required to report on their Statement of Financial Affairs any payment(s) to Ally totaling less than $600 during the 90 days before the Petition Date.

[4] For purposes of the Bankruptcy Code and as used in this case, the term "current monthly income" means "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case . . . ." 11 U.S.C. § 101(10A)(A).

3

test calculation, the Debtors deducted from current monthly income vehicle payments totaling $1,783.60:

| Line 33b | Vehicle #1 loan/lease payment (2023 Honda Accord) | $625.00 |
| Line 33c | Vehicle #2 loan/lease payment (2023 Honda Civic) | $483.00 |
| Line 33d | Other secured loans (2023 Kia K5) | $590.00 |
|  | Other secured loans (2017 Chevrolet Cruze) | $85.60 |

ECF No. 24.[5]

In considering the Motion, section 707(b)(1) instructs that the Court may dismiss a Chapter 7 case or convert it to one under Chapter 11 or 13 with the Debtors' consent, if the Court determines that granting Chapter 7 relief would be an abuse of the Bankruptcy Code. Abuse of Chapter 7 should be presumed if the Debtors' current monthly income reduced by certain amounts – monthly disposable income – and multiplied by 60 is not less than the lesser of (1) 25 percent of the Debtors' nonpriority unsecured claims or $10,275, or (2) $17,150. 11 U.S.C. § 707(b)(2)(A)(i)(I).

The Debtors' means test calculation did not result in a presumption of abuse. ECF No. 24. Notwithstanding this, the Bankruptcy Administrator timely filed a statement of presumed abuse on the theory that (as explained in detail herein) the Debtors' stated intention to surrender a vehicle rendered them ineligible to deduct the car payment for this vehicle in their means test. The presumption of abuse was timely filed on July 21, 2025, in accordance with 11 U.S.C. § 704(b)(1)(A), and the Clerk gave notice of the presumed abuse on July 22, 2025. ECF No. 16. On August 20, 2025, the Bankruptcy Administrator timely filed a motion to dismiss this case for

---

[5] The Debtors have performed their stated intention, including reaffirmation of the debts secured by the Accord, the Civic, and the Cruze. ECF Nos. 10-12.

4

abuse pursuant to 11 U.S.C. § 707(b)(1) & (b)(2). ECF No. 19. At the hearing, the Bankruptcy Administrator's staff attorney noted that in August and September, the parties worked together to narrow the areas of disagreement as to the Debtors' means test calculation, which resulted in the Debtors' filing the amended Chapter 7 Statement of Current Monthly Income and means test and the Bankruptcy Administrator filing the amended Motion. See ECF Nos. 24 and 27. As a result, the sole issue before the Court is a legal one: whether the Debtors are entitled to a means test deduction for the Kia.[6]

## DISCUSSION

1. ***The presumption of abuse arises upon correction of the Debtors' means test calculation.***

The means test permits a deduction from current monthly income for "[t]he debtor's average monthly payments on account of secured debts," which "shall be calculated as the sum of the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition." 11 U.S.C. § 707(b)(2)(A)(iii). The Bankruptcy Administrator contends that the Debtors incorrectly stated their expenses on Form 122A-2 and if corrected to

---

[6] In the Motion, the Bankruptcy Administrator also objected to the Debtors' $85.60 deduction at line 33d for the Chevrolet Cruze payment, alleging that the Debtors' adult daughter drives it, and therefore the deduction is correct only if the Debtors carry the burden of proving that the expense is actual, reasonable, and necessary for care and support of an elderly, chronically ill, or disabled household member who is unable to pay such expense or member of the Debtors' immediate family (as defined by statute) who is unable to pay such expense. See 11 U.S.C. § 707(b)(2)(A)(ii)(II). However, because disallowance of this deduction would result in only $5,136 in disposable income over 60 months, and $5,136 is less than $10,275, it would be insufficient to presume abuse. For this reason, the Bankruptcy Administrator requested at the hearing that the Court rule only on the objection to the Debtors' Kia expense deduction.

5

eliminate the $590 deduction for debt repayment on the surrendered Kia, the Debtors have disposable income high enough to raise the presumption that the case is an abuse of Chapter 7. See 11 U.S.C. § 707(b)(2)(A). At the hearing, the Bankruptcy Administrator argued that the proposed correction would result in $590 in disposable monthly income and, when added to the $49.63 disposable monthly income that the Debtors calculate, the Debtors' disposable income is $38,377.80 over 60 months. The Debtors dispute that they incorrectly stated their means test expenses.

If the Bankruptcy Administrator has sufficient evidence supporting correction of the Debtors' means test calculation that the Court, "using a preponderance of the evidence standard, could infer the validity of those figures and use them to find that a presumption of abuse arises under § 707(b)(2)(A), then a prima facie case of abuse has been established." In re Hamilton-Conversano, 2017 WL 4417566, *4, 2017 Bankr. LEXIS 3282, *9 (Bankr. E.D.N.C. Sept. 28, 2017) (quoting McDow v. Williams (In re Williams), 424 B.R. 207, 211 (Bankr. W.D. Va. 2010), aff'd 2010 WL 3292812, 2010 U.S. Dist. LEXIS 85221(W.D. Va. Aug. 19, 2010)). The burden would then shift to the Debtors to show that (pursuant to 11 U.S.C. § 707(b)(2)(B)) "special circumstances" justify the expenses claimed on the means test calculation. Id.

Courts disagree about whether 11 U.S.C. § 707(b)(2)(A)(iii) permits a means test deduction for "average monthly payments on account of secured debts" despite a Chapter 7 debtor's stated intention to surrender collateral. See In re Ray, 362 B.R. 680, 683-84 (Bankr. D. S.C. 2007) ("The courts that have addressed the issue are split . . . .") (collecting cases); In re Sterrenberg, 471 B.R. 131, 133-34 (Bankr. E.D.N.C.

6

2012) ("Courts having addressed this issue have come to varying conclusions.") (collecting cases). The issue is one of statutory interpretation. The Bankruptcy Administrator urged the Court to join courts that interpret section 707(b)(2)(A)(iii) using a "forward-looking" approach that prohibits a means test deduction for secured debt payments where Chapter 7 debtors' statement of intention states an intention to surrender the collateral. See, e.g., Krawczyk v. Lynch, 2013 U.S. Dist. LEXIS 138591, *19 (E.D.N.C. June 17, 2013). The Debtors ask the Court to join courts that interpret this Bankruptcy Code section using a "snapshot" approach that allow this deduction in Chapter 7 cases notwithstanding a stated intention to surrender the collateral. See, e.g., Morse v. Rudler (In re Rudler), 576 F.3d 37, 50 (1st Cir. 2009).

Statutory interpretation must always begin with the language of the statute itself and if that language is plain and unambiguous, the Court must enforce the statute according to its terms. United States v. Ron Pair Enters., 489 U.S. 235, 241 (1989) (citing Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985) and Caminetti v. United States, 242 U.S. 470, 485 (1917)). A statute is ambiguous if it "'lends itself to more than one reasonable interpretation.'" Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 248 (4th Cir. 2004) (citing United States ex rel. Wilson v. Graham County, 367 F.3d 245, 248 (4th Cir. 2004)). The different interpretations of 11 U.S.C. § 707(b)(2)(A)(iii) prompting some courts to adopt a forward-looking approach and others a snapshot approach suggest that its language is ambiguous.[7]

---

[7] A third approach permits the deduction for secured debt payments on collateral that the Debtors merely intend to surrender but prohibits it for property that has, in fact, been surrendered prior to the date a section 707(b) motion to dismiss is filed. In re Singletary, 354

7

The United States Court of Appeals for the Fourth Circuit adopted a forward-looking interpretation of section 707(b)(2)(A)(iii) that considers post-petition changes in debtors' financial circumstances, holding that Chapter 13 debtors may not deduct from current monthly income payments for secured debts that would not be made because of a stated intention to surrender the collateral. Morris v. Quigley (In re Quigley), 673 F.3d 269, 274 (4th Cir. 2012). Although the Fourth Circuit has not directly addressed the application of section 707(b)(2)(A)(iii) in a Chapter 7 case, Quigley analyzes the Chapter 13 disposable income test, which incorporates the Chapter 7 means test, including "precisely the same words, in the same statute (here, Section 707(b)(2)(A)(iii))." In re Campbell, 2016 WL 4150663, *7, 2016 Bankr. LEXIS 2804, *18-19 (Bankr. E.D. Va. Aug. 3, 2016) (citing Bank of America, N.A. v. Caulkett, 575 U.S. 790, 796 (Supreme Court is "generally reluctant to give the 'same words a different meaning' when construing statutes . . . ." (citation omitted))). Consequently, because of the insight into the Fourth Circuit's reasoning in Quigley, the Court interprets section 707(b)(2)(A)(iii) consistent with Quigley's forward-looking approach, concluding that Chapter 7 debtors who state an intention to surrender collateral do not qualify for a means test expense deduction for secured debt payments associated with that collateral.

Other courts also bound by Fourth Circuit precedent have reached the same conclusion. See, e.g., Sterrenberg, 471 B.R. at 135; Krawczyk, 2013 U.S. Dist. LEXIS

---

B.R. 455, 458 (Bankr. S.D. Tex. 2006). Neither the Bankruptcy Administrator nor the Debtors argued in favor of this approach, and the Court is not inclined to follow it.

8

138591 at *19; In re Byers, 501 B.R. 82, 88 (Bankr. E.D.N.C. 2013); In re Hamilton, 513 B.R. 292, 297 (Bankr. M.D.N.C. 2014); In re Campbell, 2016 WL 4150663, *8, 2016 Bankr. LEXIS 2804, *21-22 (Bankr. E.D. Va. Aug. 3, 2016). Moreover, a forward-looking interpretation of section 707(b)(2)(A)(iii) that does not permit debtors to claim an expense deduction for secured debt payments they do not intend to make is consistent with the reality-based approach that the Supreme Court adopted in Hamilton v. Lanning, 560 U.S. 505 (2010) and Ransom, 562 U.S. 61 (2011).[8] Lanning requires that a known or virtually certain substantial change in a Chapter 13 debtor's financial circumstances be considered when calculating projected disposable income under 11 U.S.C. § 1325 rather than "mechanical" disregard of such evidence. Lanning, 560 U.S. at 513. Ransom holds that Chapter 13 debtors who do not owe a loan or lease payment on a vehicle do not qualify for a vehicle ownership or lease expense deduction on the means test. Ransom, 562 U.S. at 64 (interpreting section 707(b)(2)(A)(ii)(I)).

The Court's conclusion is also consistent with Congress's stated goals in promulgating the Bankruptcy Abuse Prevention and Consumer Protection Act of

---

[8] Sterrenberg at 135 ("The holdings of Ransom, Hamilton v. Lanning, and Morris v. Quigley, provide clear guidance."); Krawczyk at *16 ("[E]ven though the Fourth Circuit [in Quigley] applied § 707(b)(2)(A)(iii) in the context of a Chapter 13 proceeding, the language of the provision is the same in a Chapter 7 proceeding, and should thus be applied in the same manner. Similarly, the principles announced in Lanning and Ransom for application of the means test apply equally in Chapter 13 and Chapter 7 cases because the language of the means test is identical in each."); Byers at 87 ("This court therefore views Quigley, Lanning, Ransom, and Krawczyk as instructive in the present matter, which involves a similar factual premise."); Campbell, 2016 Bankr. LEXIS 2804 at 19-20 ("In the Court's view, Lanning, Ransom and Quigley are all grounded in making the means test more real-world based, as opposed to a hypothetical or unrealistic result.").

9

2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), which is the source of the means test, generally, and section 707(b)(2)(A)(iii), specifically. "A primary intent of Congress in the passage of BAPCPA was to ensure that those debtors who can pay their debts do so." Ray, 362 B.R. at 684 (quoting In re Skaggs, 349 B.R. 594, 599 (Bankr. E.D. Mo. 2006)).

In adopting a forward-looking approach, the Court finds that, because the Debtors have expressed their intention to surrender the Kia, they will not be allowed to deduct the $590 expense associated with the Kia and, as a result, the presumption of abuse arises pursuant to 11 U.S.C. § 707(b)(2).

### 2. *The Debtors did not rebut the presumption of abuse.*

The Debtors seek to partially rebut the presumption of abuse, asserting that they have a special circumstance that justifies an additional expense for which there is no reasonable alternative: a student loan obligation. ECF No. 24. Mr. Holland testified at the hearing that he and his daughter are co-borrowers, jointly responsible for repayment of this debt and that the balance is approximately $20,000. He also testified that because his daughter is enrolled as a full-time student, the student loan is not in repayment status, but interest is accruing.

Once the presumption of abuse arises, section 707(b)(2)(B) provides that it "may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces . . . that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). The Court agrees with Judge Whitley's conclusion in In re Siler, 426 B.R. 167, 173 (Bankr. W.D.N.C. 2010), that a

10

narrow interpretation of the term "special circumstances" best effectuates Congress's purpose in enacting the means test. The mere fact that student loans are non-dischargeable does not constitute a special circumstance absent some further showing regarding the unforeseen necessity to incur the student loans. In re Hammock, 436 B.R. 343, 355 (Bankr. E.D.N.C. 2010); Siler, 426 B.R. at 175 ("[S]tudent loans . . . incurred in the ordinary pursuit of a career . . . are not unique and they do not enjoy statutory priority over other creditor claims. They will rarely, if ever, qualify as special circumstances."); In re Hanks, 618 B.R. 185, 193 (Bankr. W.D. La. 2020) ("[H]ad Congress intended [student loans] to be a per se special circumstance, it certainly could have said so.").

While some cases, including Siler, suggest in dicta that there may be "special circumstances" that required a debtor to incur student loans, such as "unforeseen injury, disability or . . . an employer closing," those facts do not exist in the present case. Siler, 426 B.R. at 175. Mr. Holland testified that his daughter was diagnosed with and treated for scoliosis as a child, but there is no basis for determining that her condition prompted her to incur student loan debt. Put simply, repayment of a student loan is not a special circumstance for the Debtors.

## **CONCLUSION**

Upon correction of the Debtors' means test calculation, the Bankruptcy Administrator met her burden of proving a presumption that this case is an abuse of Chapter 7 of the Bankruptcy Code. The burden shifted to the Debtors to prove a special circumstance that gives rise to a necessary and reasonable expense for which

11

there is no reasonable alternative. The Debtors did not meet this burden. Allowing the Debtors to continue in Chapter 7 is an abuse of Chapter 7 pursuant to section 707(b) of the Bankruptcy Code. Moreover, the Debtors have sufficient disposable income to pay their unsecured creditors a meaningful dividend.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. The Motion is hereby **GRANTED**.

2. The Debtors shall have 30 days from the entry of this order to convert their case to one under Chapter 13 or the case shall be **DISMISSED** pursuant to 11 U.S.C. § 707(b)(1) without further notice to the Debtors.[9]

3. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**IT IS SO ORDERED.**

*This order has been signed electronically.*　　　　　　　　　　　　*United States Bankruptcy Court*
*The Judge's signature and Court's seal*
*appear at the top of the Order.*

---

[9] The Debtors filed a motion to convert this case while preparation of this order was in progress.